PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1288
_____

UNITED STATES OF AMERICA

v.

ANTHONY BURNETT
a/k/a ANT

ANTHONY BURNETT,
                            Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 2:11-cr-00274-001)
Honorable Eduardo C. Robreno, District Judge
_____

Submitted under Third Circuit LAR 34.1(a)
October 23, 2014

BEFORE: FUENTES, GREENBERG, and
COWEN, Circuit Judges

(Filed: December 2, 2014)

_____

Zane David Memeger
Joseph A. LaBar
United States Attorney
Robert A. Zauzmer
Chief of Appeals
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, Pa. 19106

    Attorneys for Appellee

Michael J. Diamonstein
Two Penn Center
Suite 900
1500 John F. Kennedy Boulevard
Philadelphia, Pa. 19102

    Attorney for Appellant

_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.

## I.  INTRODUCTION

A  well-informed  criminal  concerned  about  having

2

standing to challenge a search of his escape vehicle if he is apprehended after a robbery would recognize that even though the owner of a vehicle may claim a privacy interest in the vehicle and its contents, a passenger or former passenger of the vehicle faces an uphill battle if he attempts to establish that he has standing to move to suppress evidence found in the vehicle during the search. This case implicates that distinction between an owner and a passenger as it presents a question whether a passenger, who does not own the vehicle and leaves it before the police take possession of it, may contest the search of the vehicle and the seizure of stolen goods recovered in the search. We conclude, as did the District Court, that appellant, who was a passenger or, as he prefers to characterize his status, a former passenger in the vehicle, lacked standing to challenge the search of the vehicle used in a robbery. Accordingly, we will uphold the Court's order denying appellant's motion to suppress evidence recovered in the search of the vehicle, and, inasmuch as we also reject appellant's other contentions, we will affirm the judgment and conviction and sentence entered on February 4, 2014.

## II.  FACTUAL AND PROCEDURAL HISTORY

### A.  Robbery of Poland Jewelers

On the morning of March 29, 2011, appellant Anthony Burnett, and his co-felon, Raheem Hankerson, robbed A.I. Poland Jewelers in Philadelphia. In the days leading up to the robbery, Hankerson and Burnett planned the robbery and visited the store. In addition, Burnett secured a gun to use during the crime and Hankerson arranged to borrow a black Honda owned

3

by his girlfriend, Shavon Adams, for use in the robbery. On the day of the robbery, Hankerson borrowed the Honda from Adams, picked up Burnett, and drove to Poland Jewelers. Adams, who was not acquainted with Burnett, had given Hankerson permission to use the Honda but so far as the record reveals did not know that Burnett would be a passenger in the car or that Hankerson intended to use it during commission of a crime. After reaching the store, Hankerson parked the car on a nearby side street as Burnett got ready to enter the store.

Wearing a hat, wig, and sunglasses, Burnett entered Poland Jewelers and, posing as a customer, engaged an employee in a discussion about a potential purchase. Burnett then pointed a gun at the employee and the owner of the store, and, after ordering them to get on the floor, restrained them with plastic "zip ties." A store video security system clearly captured Burnett's face during the early stages of the robbery. After he subdued the victims, Burnett called Hankerson by cell phone and told him to join him in the store. The two men donned latex gloves and looted the store, stealing, among other items, jewelry, a revolver, and the videotape from its security system. At one point when the store owner attempted to free himself, Burnett bludgeoned him on the head with the gun, inflicting wounds that required seven surgical staples to close.

Acting quickly, the robbers threw their loot into shopping bags. Hankerson shoved the stolen revolver into a pocket of his coat and left the store, and Burnett followed him out. The robbers fled from the area in Adams' Honda with Hankerson driving. They, however, got lost and drove down a dead-end street about two and a half miles from Poland Jewelers. For reasons that the parties do not discuss in their briefs, instead of backing out or turning around and continuing to drive away in

4

the Honda, they parked the Honda on the dead-end street. Then from the back seat, Burnett and Hankerson placed the shopping bags in the trunk of the Honda, and exited the vehicle. They then left the area on foot.

After Hankerson and Burnett fled, the victims freed themselves and called the police. An initial police radio broadcast reported that Poland Jewelers had been robbed by two black men, one wearing a wig and one wearing a yellow coat, both armed with guns. Officers responded to the scene and quickly surmised that the robbers used a vehicle to make their escape, a conclusion that they reached as none of the officers who responded to the robbery had seen anyone fleeing the area on foot, and the officers believed that two men running while wearing wigs and carrying bags of goods likely would have been noticed and reported. The police then received a call reporting that a "suspicious black Honda" was parked on a dead-end residential street not far from the scene of the robbery. An officer dispatched to that location interviewed two witnesses who reported that its operator had driven the Honda up the street at a high rate of speed; that two black men had exited the car; that one wore a tan jacket and jumped out of the driver's side of the car and opened the trunk; that the second man threw various items into the trunk; that the man in the tan jacket threw a bag into the trunk; and that the two men then fled the area on foot. The officer suspected that the vehicle had been used in the Poland Jewelers robbery and notified police dispatch of what he had discovered.

The police quickly ascertained from the Honda's license plate that the registered owner of the vehicle had an address in a section of Philadelphia different from that where the police found it. The police then sent a patrol car to the Honda owner's

5

address in an unsuccessful effort to contact the Honda's owner, and then had the Honda towed to the police garage. After the police recovered the Honda, the detective assigned to the case prepared an affidavit and application for a search warrant, which the Philadelphia District Attorney's Office approved. The application was submitted to a magistrate who approved it and issued the search warrant.

The police executed the warrant by searching the trunk of the car and in the search recovered the jewelry, store gun, stolen security videotape, two wigs, the bloodstained gun used in the robbery, a wallet containing Hankerson's identification card, latex gloves, and "zip ties" identical to those used during the robbery to bind the victims. A test of the latex gloves for DNA evidence revealed that one contained the DNA of Burnett and the store owner and the other contained the DNA of both Hankerson and the store owner.

B. Burnett's Motion to Suppress and Sentencing

On May 12, 2011, a grand jury in the Eastern District of Pennsylvania returned an indictment charging Burnett and Hankerson with conspiracy to commit a Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Count One); a Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Count Two); using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1) (Count Three); and possession of a stolen firearm, in violation of 18 U.S.C. § 922(j) (Count Four). The indictment also charged Burnett with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and § 924(e) (Count Six).

Hankerson pleaded guilty and cooperated with the

government. At Burnett's trial, he identified Burnett as his accomplice and described both the planning and execution of the robbery. Both of the robbery victims identified Burnett as one of the robbers. The government introduced the store's security videotape, which contained footage of Burnett's face, as well as still photos from the tape. An expert testified that Burnett's DNA, along with that of the store owner, was found on a latex glove recovered from the Honda. The evidence of Burnett's guilt was overwhelming.

Burnett filed a pretrial motion challenging the seizure and search of the Honda, contending that the officers lacked probable cause to seize the car and that the magistrate erred in issuing the search warrant. The District Court conducted two hearings on the motions and ordered supplemental briefing. The government argued that Burnett's motion should be denied for lack of standing. At the suppression hearing, Burnett's counsel conceded that there was no legal authority supporting the argument that Burnett had standing to challenge the search of the car but argued that this result seemed "fundamentally unfair." App. 110. The District Court ultimately held that Burnett lacked standing to challenge the search, as he merely was a passenger in the car and therefore lacked a privacy interest in the vehicle.

Notably, prior to trial, Burnett moved to proceed pro se. The District Court granted this motion but ordered Burnett's counsel to act as standby counsel. At the close of the government's case, Burnett unsuccessfully moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that the Court should dismiss the robbery and Section 924(c) counts because the indictment did not allege as an element of the offenses that the firearm was used or

7

carried in the offenses "in furtherance" of crimes of violence. On August 1, 2013, the jury convicted Burnett of all the offenses charged in the indictment except for the count of possession of a stolen firearm.

The Probation Office submitted a presentence report ("PSR") that concluded that the computation of Burnett's base offense level with the relevant enhancement, yielded an adjusted offense level of 33. Because Burnett had three prior convictions for crimes of violence – two robbery convictions and a conviction for aggravated assault – the Probation Office concluded that he was an armed career criminal pursuant to 18 U.S.C § 924(e) and a career offender under U.S.S.G. § 4B1.1 so that his guideline range was 188 to 235 months. When a mandatory consecutive period of incarceration of 84 months for the Section 924(c) offense was added to the guideline range, Burnett faced a total advisory custodial range of 272 to 319 months.

Burnett raised various objections to the PSR, including a contention that he should not have been designated as an armed career criminal because a jury did not make that determination. Though he now challenges the sentence on an Eighth Amendment basis, he did not make that claim in the District Court. At the sentencing hearing, the Court concluded that Burnett was an armed career criminal and adopted a guideline calculation and range consistent with the PSR. The Court imposed a within-guideline range custodial sentence of 288 months, noting that Burnett had been a "regular participant in the criminal justice system most of his life." App. 820. Despite stressing that Burnett's violent actions in this robbery were "exceedingly troubling," the Court declined to impose a sentence at the top of the guidelines range. Id. 821. Instead, the

Court sentenced him to a 204-month custodial term on the robbery counts, and a consecutive sentence of 84 months on the Section 924(c) count. The Court also imposed a period of supervised release of five years to follow the service of the period of incarceration, and ordered Burnett to pay a $1,000 fine, a special assessment of $400, and $300 in restitution.

Burnett filed a timely appeal of his conviction and sentence.

## III. STATEMENT OF JURISDICTION

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## IV. STANDARD OF REVIEW

We review a district court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise plenary review over its application of the law to those facts. United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002). We also exercise plenary review of a challenge to the sufficiency of an indictment, United States v. Whited, 311 F.3d 259, 262 (3d Cir. 2002), and plenary review over purely legal questions in relation to Eighth Amendment challenges. United States v. MacEwan, 445 F.3d 237, 247 (3d Cir. 2006). Where, as here, a defendant did not make an Eighth Amendment challenge to a sentence in the district court but raises the Eighth

9

Amendment issue on appeal, a court reviews the sentence for plain error. United States v. Miknevich, 638 F.3d 178, 185 (3d Cir. 2011). Finally, we review a finding that a photo array was not unnecessarily suggestive for clear error. United States v. Stevens, 935 F.2d 1380, 1390 (3d Cir. 1991).

## V. DISCUSSION

Burnett presents a litany of issues for our review. Addressing each in turn, we reject all of his arguments. Initially we note that he waived or did not preserve some of his contentions, as he failed to raise them in the District Court, but we nonetheless address all of his arguments on the merits. We begin with his assertion that he has standing to challenge the search of Adams' car, which he had abandoned,[1] in which he had been a passenger during its period of use for commission of the robbery.

### A. The District Court Properly Denied Burnett's Motion to Suppress Evidence.

---

[1] When we say that Burnett "abandoned" the Honda, we are not implying that if the police had not taken possession of the vehicle and recovered its contents he and Hankerson would not have returned to take possession of the vehicle, as we have no way of knowing what they would have done if the police had not towed the car away. We do note that in his brief Burnett indicates that he was "storing his items in the trunk," appellant's br. 3, implying that he intended to return for them.

10

Burnett asserts that the Court erred in ruling that he lacked standing to challenge the search of the Honda used in the robbery. Burnett presents a somewhat creative argument. He contends that inasmuch as he had abandoned the Honda prior to the search, he was not a passenger in the car at the time the police located and seized it. Thus, he contends that the Court erred by applying law relevant to the standing of passengers to move to suppress evidence seized in the search of a vehicle. Drawing his argument to what he believes is a logical conclusion, he argues that his privacy interest as a stranger to the vehicle is stronger than any interest that he might have had if the police seized the Honda while he was a passenger in it.

In considering this point we note first that Burnett did not present this "abandonment" argument in the District Court and that he has waived his right to pursue it on appeal. It is well established that a defendant waives his right to raise suppression arguments on appeal that he did not raise in a district court. See United States v. Rose, 538 F.3d 175, 182-84 (3d Cir. 2008). In Rose we explained that under Federal Rule of Criminal Procedure 12(b)(3), a motion to suppress evidence must be made before trial, and under Rule 12(e) "a party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by extension the court provides." This waiver rule "trumps Rule 52(b)'s plain error standard in the context of motions to suppress." 538 F.3d at 176. Accordingly, the Rule 12(e) waiver provision applies where a defendant attempts to advance a new, specific theory on appeal. "[I]n the context of a motion to suppress, a defendant must have advanced substantially the same theories of suppression in the district court as he or she seeks to rely upon in this Court – in other words, a litigant cannot jump from

11

theory to theory like a bee buzzing from flower to flower." Id. at 179-80 (internal quotation marks omitted); see also United States v. Lockett, 406 F.3d 207, 211-12 (3d Cir. 2005) (finding waiver where the defendant argued in the suppression proceeding that a search of his luggage was not voluntary, and on appeal argued he had provided only limited consent to the search of his luggage and the officers exceeded this consent); United States v. Joseph, 730 F.3d 336, 341-42 (3d Cir. 2013) (to preserve a suppression argument, it is not sufficient to simply raise an "issue," such as lack of probable cause; rather, the party must make the same "argument" as presented in the district court, which must depend on both the same legal rule and the same facts as the argument presented in the district court).

In the District Court, Burnett's counsel, treating Burnett as a passenger, actually conceded that Burnett lacked standing under current law. And, while he opined that this was "fundamentally unfair," he recognized that the Court was bound by this precedent. Thus, Burnett waived his claim that he had a privacy interest in the Honda and/or the packages it contained on any theory.

That said, even if Burnett had preserved his "abandonment" claim, he would not have demonstrated that he had standing to challenge the search of the vehicle. An individual challenging a search has the burden of establishing that he had a reasonable expectation of privacy in the property searched and the item seized. Minnesota v. Olson, 495 U.S. 91, 95-97, 110 S.Ct. 1684, 1687-88 (1990). A person must show both that he had a subjective expectation of privacy in the area searched and that his expectation was objectively reasonable. Rakas v. Illinois, 439 U.S. 128, 143-44, 99 S.Ct. 421, 424-25 (1978); United States v. Donahue, 764 F.3d 293, 298-99 (3d Cir.

2014).  To demonstrate that he had a subjective expectation of privacy, the defendant must show that he "took normal precautions to maintain his privacy."  Rawlings v. Kentucky, 448 U.S.  98, 105, 100 S.Ct. 2556, 2561 (1980).

In light of these principles, "[i]t is clear that a passenger in a car that he neither owns nor leases typically has no standing to challenge a search of the car."  United States v. Baker, 221 F.3d 438, 441-42 (3d Cir. 2000) (citing Rakas, 439 U.S. at 133-34, 99 S.Ct.  at 424-25).  As the Supreme Court explained, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."  Rakas, 439 U.S. at 134, 99 S.Ct at 425.  Burnett has failed to demonstrate that he had a reasonable expectation of privacy in the Honda or its contents.  Adams, the owner of the Honda, did not know Burnett, and she did not give him permission to occupy her car.  Hankerson borrowed the car on the morning of the robbery and picked Burnett up on the way to Poland Jewelers.  To the extent that Burnett concedes he was a passenger in the Honda on the ride to and from the robbery, it is clear that he and Hankerson abandoned the car on a dead-end street with the stolen loot and other items still in its trunk.

As we have indicated, Burnett attempts to defend his claim that he had a privacy interest in the Honda and its contents by arguing that he ceased being a "passenger" when he walked away from the car, so the line of cases addressing a passenger's expectation of privacy is inapplicable here.  But even adopting his argument that he ceased being a "passenger" once he left the car, it does not follow that, by leaving the car, he acquired an otherwise nonexistent privacy interest in the Honda or its

13

contents.

We therefore conclude that when Burnett abandoned the Honda by walking away from it, he also abandoned any conceivable privacy interest that he might have had in the vehicle or its contents.[2]  The fact that he left property in the Honda's trunk does not give him standing to challenge a search of that portion of the vehicle.  Even if Burnett owned the stolen property, which, of course, he did not, the Supreme Court has rejected the theory that a "legitimate expectation of privacy" can rest on mere ownership of property.  Thus, in United States v. Salvucci, the Court stated, "we simply decline to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched."  448 U.S. 83, 92, 100 S.Ct. 2547, 2553 (1980); see Rakas, 439 U.S. at 144, 99 S.Ct. at 431.  In Salvucci, the defendants were charged with possession of stolen mail, which was found during a search of the residence of one of the defendant's mother.  448 U.S. at 85, 100 S.Ct. at 2549.  The Court held that the defendants did not have standing to challenge the search; even if they were charged with possession of the items, because they did not have a reasonable expectation of privacy in the place searched.  Id.  Courts will "engage in a conscientious effort to apply the Fourth Amendment by asking not merely whether the defendant had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched."  Id. at 93, 100 S.Ct. at 2553 (internal quotation marks and citation omitted); see also Rawlings, 448 U.S. at 104-06, 100 S.Ct. at 2560-62 (defendant lacked standing to challenge the search of his companion's purse because he

---

[2] As we have made clear, he did not have at any point any privacy interest in the car or its contents.

14

failed to show that he had a reasonable expectation of privacy in the purse).

We conclude that the District Court correctly determined that Burnett lacked standing to challenge the search of the Honda, and properly denied Burnett's motion to suppress the evidence seized in the search. We also point out that the police conducted their search only after they obtained a warrant to do so.[3] Any argument that the warrant was invalid is baseless. The Court concluded in a detailed opinion not only that the initial search and the search pursuant to the warrant were supported by probable cause, but also that the officers could rely in good faith on the warrant. Burnett fails to identify any errors in the Court's findings of fact and conclusions of law, which are well supported by the record. Accordingly, we will uphold the District Court's ruling on the search and seizure issue.

### B. The District Court Properly Denied Burnett's Motion to Suppress Photographic Identification

Burnett claims that the District Court erred by denying his motion to suppress a photographic identification of him on the ground that the array was unduly suggestive. We reject his argument.

We reiterate that we review the District Court's findings for clear error. Stevens, 935 F.2d at 1390. A pretrial identification procedure violates a defendant's constitutional right to due process when it both (1) is unnecessarily suggestive

---

[3]We, of course, are not implying that they needed a warrant to make the search. See Donahue, 764 F.3d at 299-300.

15

and (2) creates a substantial risk of misidentification. United States v. Brownlee, 454 F.3d 131, 137 (3d Cir. 2006) (citing Manson v. Brathwaite, 432 U.S. 98, 107, 97 S.Ct. 2243, 2249 (1977)). A court should suppress an identification only where "the photographic identification procedure was so [unnecessarily] suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971 (1968). The use of a photo array may violate due process "when police attempt to emphasize the photograph of a given suspect, or when circumstances surrounding the array unduly suggest who an identifying witness should select." United States v. Lawrence, 349 F.3d 109, 115 (3d Cir. 2003) (citing Simmons, 390 U.S. at 383, 88 S.Ct. at 971).

A photographic array is not unnecessarily suggestive solely because certain characteristics of a defendant or photograph set him apart from the other persons pictured in the array. Reese v. Fulcomer, 946 F.2d 247, 260 (3d Cir. 1991) (holding a photographic array was not unnecessarily suggestive when defendant was the only pictured person shown with sideburns and a card with name and height); United States v. Dowling, 855 F.2d 114, 117 (3d Cir. 1988) (six-person photographic array was not unduly suggestive when the defendant was the only one wearing a red shirt because all individuals "were reasonably comparable in dress and appearance"). The key question is whether differences in characteristics "sufficiently distinguish" a defendant to suggest culpability. Reese, 946 F.2d at 260.

Burnett argues that the photo array that led to his identification was unduly suggestive because the photos of the other individuals in the array did not sufficiently resemble him.

16

The District Court examined the array and disagreed, noting that each of the photographs was of an African-American male "with facial hair, a goatee, some of them with pepper coloring in their goatee, and all of the males . . . relatively light skinned." App. 379. Burnett himself is "an African-American of light skin and light color eyes, sporting a goatee with some gray hair, and he has a relatively sparse head of hair." Id. The Court found that all of the men in the array were of a similar age; there was no striking difference in the amount of head hair each had; and the skin color of the members of the array was not strikingly different. The Court concluded that any slight differences in the appearances of those depicted did not rise to the level of being unduly suggestive, and did not create a risk of misidentification.

We hold that the District Court's careful and well-founded analysis dispels Burnett's claim that the array was unduly suggestive. We, accordingly, will affirm the Court's decision to deny Burnett's pretrial motion to suppress his photographic identification.

C. The District Court Properly Denied
Burnett's Motion for Judgment for Acquittal.

Burnett contends that the District Court erred by failing to grant his motion to dismiss the Section 924(c) count. At the close of the government's case, Burnett, who was proceeding pro se, moved for a judgment of acquittal on the Hobbs Act and Section 924(c) counts of the indictment on the ground that they did not charge the "in furtherance" element of each offense. The Court denied the motion, determining that the indictment properly charged the elements of each offense. In a counseled post-verdict motion, Burnett moved for a judgment of acquittal

17

on the Section 924(c) count because it failed to state that the firearm was used or carried "in furtherance" of a crime of violence, but abandoned his attack on the other counts. The Court again denied the motion on the ground that his argument was incorrect as a matter of law.

We will affirm the District Court's ruling. As we have indicated, we exercise plenary review of a challenge to the sufficiency of an indictment. Whited, 311 F.3d at 262. As pertinent here, Section 924(c) provides that "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall . . . be sentenced to a term of imprisonment of not less than 5 years." Count Three of the superseding indictment charged that Burnett used and carried, and aided and abetted the use and carrying of a firearm, during and in relation to a crime of violence (that is, the robbery charges in Counts One and Two), in violation of 18 U.S.C. § 924(c). The indictment further alleged that Burnett brandished the gun during the crime.

Section 924(c) has two separate prongs, the violation of either standing alone is sufficient to support a conviction under the statute: (1) "us[ing] or carry[ing]" a firearm "during and in relation to" the underlying offense; or (2) "possess[ing] a firearm" "in furtherance" of the underlying offense. See United States v. Bobb, 471 F.3d 491, 496 (3d Cir. 2006); United States v. Loney, 219 F.3d 281, 287 (3d Cir. 2000) (the "possession standard is not simply added to the list of 'use' and 'carry,' which must be done 'during and in relation to' the [underlying] offense; rather the possession must be 'in furtherance of' the

18

[underlying] offense. By making this distinction, Congress may well have intended 'in furtherance' to impose a more stringent standard than 'in relation to.'").

Before 1998, Section 924(c) prohibited only using and carrying a firearm during and in relation to a crime of violence or a drug trafficking crime. Then, in 1995, the Supreme Court held that "using" a firearm under Section 924(c) required that the firearm be actively employed, and did not include mere possession. Bailey v. United States, 516 U.S. 137, 143-44, 116 S.Ct. 501, 505 (1995). In response to Bailey, Congress amended Section 924(c) to include possession of a firearm in furtherance of a crime. Pub. L. 105-386, § 1(a)(1), 112 Stat. 3469 (Nov. 13, 1998). But the amendment did not make any material change to the "using and carrying" provision.

Thus, both the text and history of Section 924(c) show that Burnett's reading of the statute fundamentally is flawed. He argues that the indictment was defective because it did not allege that he used the gun "in furtherance of" a crime of violence, but the "in furtherance" element applies only to the possession prong. He is wrong as a matter of law; we thus will affirm the District Court's denial of Burnett's motion for judgment of acquittal.

### D. The Evidence Supports the Verdict as to All Counts.

Burnett argues that the District Court erred by failing to grant his motion for a judgment of acquittal on the ground that the evidence was insufficient to support his conviction on any count. His argument before us is one succinct sentence: "We respectfully submit that the evidence adduced at trial – even

19

when evaluated in the light most favorable to the government – was insufficient to uphold the jury's decision." Appellant's br. 8-9. We are satisfied that the argument is groundless.

An argument in an appellate brief "consisting of no more than a conclusory assertion such as the one made here (without even a citation to the record) will be deemed waived." Reynolds v. Wagner, 128 F.3d 166, 178 (3d Cir. 1997). Setting aside the waiver, we review Burnett's conclusory claim for plain error, as Burnett failed to move in the District Court for a judgment of acquittal based on the insufficiency of the evidence to support the government's case. United States v. Gordon, 290 F.3d 539, 547 (3d Cir. 2002). Pursuant to this standard, we review the argument "only for a manifest miscarriage of justice – the record must be devoid of evidence of guilt or the evidence must be so tenuous that a conviction is shocking." United States v. Avants, 367 F.3d 433, 449 (5th Cir. 2004). Such an error requires a defendant to establish that the trial judge and prosecutor were derelict in even permitting the jury to deliberate. See United States v. Wright-Barker, 784 F.2d 161, 171 (3d Cir. 1986).

An appellate court's review of a ruling by a district court that the evidence supported a conviction requires it to determine whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789 (1979). Consequently, a reviewing court "must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [its] judgment for that of the jury." United States v. Caraballo-Rodriguez, 726 F.3d 418, 430 (3d Cir. 2014) (en banc) (quoting United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005)); see

20

also Cavazos v. Smith, 132 S.Ct. 2, 4 (2011) ("A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.").

Consequently, even if Burnett had more thoroughly fleshed out his argument, we would determine that his sufficiency of the evidence argument is not meritorious. The government presented an avalanche of evidence, including eyewitness identifications, co-defendant testimony, and DNA evidence, demonstrating that Burnett committed the gunpoint robbery. The evidence was more than sufficient; it was overwhelming. Thus, the evidence supported Burnett's conviction on all counts.

### E. Burnett is An Armed Career Criminal Under 18 U.S.C. § 924(e).

Burnett claims that the District Court erred when it determined that he was an armed career criminal under 18 U.S.C. § 924(e). He argues that the Court imposed his sentence in violation of the law that the Supreme Court announced in Alleyne v. United States, 133 S.Ct. 2151 (2013), because his predicate criminal convictions were not set forth as part of the allegations in his indictment and the question of whether he had been convicted of the offenses was not submitted to the jury. We hold that the Court properly concluded that Burnett was an armed career criminal and lawfully applied the mandatory minimum penalty required by Section 924(e).

21

Section 924(e) mandates the imposition of a mandatory minimum period of incarceration of 15 years where a defendant is convicted of violating 18 U.S.C. § 922(g) and has three previous convictions for violent felonies or serious drug offenses. In Almendarez-Torres v. United States, 523 U.S. 224, 243, 118 S.Ct. 1219, 1231 (1998), the Supreme Court held that prior convictions that increase the statutory maximum sentence for a particular violation are not elements of an offense, and therefore a district court may determine if there had been such convictions when sentencing a defendant on a new conviction by using a preponderance-of-the-evidence standard. Later, in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000), the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490, 120 S.Ct. at 2362-63. The Court in Alleyne extended the Apprendi rule to proof of facts that increase a mandatory minimum sentence, requiring such facts to be submitted to a jury and proven beyond a reasonable doubt; however, the Court did not extend the rule to proof of prior convictions, specifically articulating that the issue was not before the Court. Alleyne, 133 S.Ct. at 2160 n.1. We since have recognized that Alleyne did "nothing to restrict the established exception under Almendarez-Torres that allows judges to consider prior convictions" for purposes of enhanced penalties. United States v. Blair, 734 F.3d 218, 227-28 (3d Cir. 2013). Ultimately, Alleyne's rule does not apply here to the recidivist enhancement of Section 924(e). Accordingly, we reject Burnett's argument to the contrary.

22

F. Burnett's Within-Guideline Sentence Does Not Violate the Eighth Amendment.

Finally, Burnett argues that his within-guideline-range sentence of 288 months imprisonment amounts to cruel and unusual punishment in violation of the Eighth Amendment. Because he did not make his Eighth Amendment challenge in the District Court, we review the argument on a plain error basis. Miknevich, 638 F.3d at 185. We determine that Burnett's sentence is proportional to his crimes of conviction and does not constitute cruel and unusual punishment.

The Supreme Court has explained that the "Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to non-capital sentences." Ewing v. California, 538 U.S. 11, 20, 123 S.Ct. 1179, 1185 (2003) (citations omitted). A court must consider three proportionality factors when evaluating Eighth Amendment challenges: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions. Solem v. Helm, 463 U.S. 277, 290-92, 103 S.Ct. 3001, 3010 (1983). In conducting this analysis, a court grants substantial deference to legislative decisions regarding punishments for crimes. United States v. Rosenberg, 806 F.2d 1169, 1175 (3d Cir. 1986); Miknevich, 638 F.3d at 186 ("Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment . . . because we accord substantial deference to Congress, as it possesses broad

23

authority to determine the types and limits of punishments for crimes.").

The first factor acts as a gateway prong to the proportionality inquiry. The Eighth Amendment, after all, only forbids sentences that are "grossly disproportionate" for a conviction for the crime involved. If the defendant fails to demonstrate a gross imbalance between the crime and the sentence, a court's analysis of an Eighth Amendment challenge is at an end. Successful proportionality challenges in non-capital cases are "exceedingly rare." Ewing, 538 U.S. at 21, 123 S.Ct. at 1185 (quoting Rummel v. Estelle, 445 U.S. 263, 272, 100 S.Ct. 1133, 1138 (1980)).

Here, the record evidences that there is proportionality between Burnett's crime and sentence. During the robbery, Burnett terrorized two victims with a gun, forced them to the floor, and bound them with plastic ties. When one of the victims tried to escape, Burnett clubbed him, causing head wounds that required seven surgical staples to close. Burnett threatened the victim with future violence, taking one of the victim's driver's license from his wallet and warning the victim that he knew where he lived. The other victim begged Burnett not to kill her. As the District Court noted, both victims were subjected to "sustained terror," and feared they would not survive the robbery. App. 820.

As the District Court also noted, Burnett's conduct was not personally aberrant behavior. Burnett has additional convictions for a robbery, one in which he wielded an icepick,

24

another performed at gunpoint. He was convicted for an assault during which he shot his victim in the knee. Burnett is a recidivist. Our analysis of the PSR reveals that when Burnett committed his crimes in this case, he was under the supervision of both the Pennsylvania Parole Board and the Philadelphia Court of Common Pleas in two different cases, and had been out of prison only for 31 days when he committed this offense. When the police caught him for the Poland Jewelers robbery, he threatened them with a box cutter, triggering an altercation that resulted in him being shot in the chest. Thus, we determine that the sentence the District Court imposed of 24 years was both reasonable and appropriate.[4]

---

[4]Notably, Burnett makes no effort to demonstrate that his sentence is "grossly disproportionate" to his crime, but argues only that this sentence is cruel and unusual, as applied to him, claiming that at his age it is effectively a "life sentence." Appellant's br. 12-13. Lengthy sentences up to and including life in prison have been upheld when proportionate to the crime. See Rummel, 445 U.S. at 284-85, 100 S.Ct. at 1135 (rejecting an Eighth Amendment challenge to a mandatory life sentence imposed under a state recidivist statute where the triggering crime was the defendant's conviction of obtaining $120 by false pretenses, while the earlier predicate crimes were an $80 fraudulent use of a credit card, and the passing of a $28 forged check); see also United States v. Walker, 473 F.3d 71, 83 (3d Cir. 2007) (rejecting an Eighth Amendment challenge to a 55-year mandatory consecutive sentence imposed under Section 924(c) because the "harshness" of the sentence, balanced against

25

Burnett faced an aggregate mandatory minimum prison term of at least 22 years, an effective guideline range of up to 319 months, and a statutory maximum sentence of life in prison. Though the District Court exceeded the mandatory minimum term, it sentenced Burnett within the guideline range that applies to like offenders, well below the statutory maximum penalty. The fact that the sentence fell within the advisory guideline range is in and of itself strongly suggestive of proportionality. See, e.g., United States v. Abdulmutallab, 739 F.3d 891, 907 (6th Cir. 2014) (an Eighth Amendment challenge must fail if a defendant receives a sentence within the guideline range when the guideline range contemplates the gravity of the offense); United States v. Cardenas-Alvarez, 987 F.2d 1129, 1134 (5th Cir. 1993) (finding that the Guidelines are a "convincing objective indicator of proportionality").

Burnett's 288-month sentence is measured and appropriate under the circumstances, and certainly was not grossly disproportionate to the crime. Burnett has failed to demonstrate that his sentence violated the Eighth Amendment, and has failed to demonstrate plain error, or any error at all, in this regard. We will affirm the District Court's judgment of conviction and sentence.

## VI.    CONCLUSION

We will affirm the judgment of conviction and sentence

the gravity of the offenses, did not violate the proportionality principles of the Eighth Amendment).

entered in the District Court of February 4, 2014.