**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2137
_____

UNITED STATES OF AMERICA

v.

JOSEPH LANNUTTI,
Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2:13-cr-00189)
District Judge: Hon. Mary A. McLaughlin
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 23, 2016
_____

Before: GREENAWAY, JR., VANASKIE, and SHWARTZ, Circuit Judges.
(Filed: April 27, 2016)

_____

OPINION[*]
_____

SHWARTZ, Circuit Judge.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Joseph Lannutti appeals his convictions for receipt and possession of child pornography, arguing that the Government failed to prove he knowingly engaged in such acts. Because the evidence presented to the jury was sufficient to sustain the convictions, we will affirm.

I

Upon learning that a computer using the IP address assigned to Lannutti had accessed a website linked to child pornography, law enforcement visited Lannutti's home and, with his consent, conducted a forensic preview of his computer.[1] The preview revealed forty-five videos "depict[ing] suspected prepubescent children engaged in sexual activity." The video files were contained in a "media" folder on Lannutti's hard drive, associated with Lannutti's user profile, "Mikey." The files had been created primarily between midnight and 6:00 a.m. on various nights. Several of the files had names specifically indicating that they contained child sex acts, and others bore names such as "Lolita," which trial testimony demonstrated are linked to child pornography. Lannutti's computer also contained a program designed to download internet videos and automatically place a copy in the "media" folder, and another program designed to mask a user's internet activity.

Lannutti told the investigators that he spent approximately three to four hours a night viewing pornography, that he preferred "borderline" and "barely legal" pornography, and that he visited Chinese websites. Investigation further revealed that

_____

[1] A forensic preview is "a very focused examination . . . looking for particular artifacts," such as files and programs, on a computer. App. 23.

someone using Lannutti's computer profile had searched for a Russian translation of the word "underage," App. 38, and some of the child pornography videos contained Asian language characters.

Lannutti was charged, tried, and convicted of receiving six videos containing child pornography in violation of 18 U.S.C. § 2252(a)(2) (Count One) as well as possessing media containing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) (Count Two). Lannutti appeals, arguing that the Government did not prove he knowingly received or possessed the child pornography found on his computer.

## II[2]

To secure a conviction for either possession or receipt of child pornography under § 2252(a), the Government must prove that the defendant engaged in the acts knowingly.[3] See United States v. Miller, 527 F.3d 54, 63 (3d Cir. 2008) (analyzing the parallel child

---

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. Because Lannutti failed to move for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(c), we review the sufficiency of the evidence only for plain error. See United States v. Burnett, 773 F.3d 122, 135 (3d Cir. 2014). Accordingly, we review his argument "only for a manifest miscarriage of justice" and will uphold the verdict unless the record is so "devoid of evidence of guilt or the evidence [is] so tenuous that a conviction is shocking." Id. (quotation marks and citation omitted). In making our determination, we view the evidence in the light most favorable to the Government, looking at whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979)(emphasis omitted).

[3] A finding that Lannutti knowingly received child pornography in violation of § 2252 necessarily subsumes the offense of possession of child pornography, as one "cannot knowingly receive a visual depiction of child pornography without simultaneously possessing it." United States v. Benoit, 713 F.3d 1, 14 (10th Cir. 2013); see Miller, 527 F.3d at 72.

3

pornography statute 18 U.S.C. § 2252A).[4]  Because the possibility exists that something other than a defendant's actions may be responsible for the illicit videos appearing on a computer, we must "rigorously scrutinize whether there is sufficient evidence to establish the intent-element of the crime."  Id. (citation omitted).  In assessing sufficiency of the evidence as it relates to knowledge in child pornography cases, we consider four non-exhaustive factors: (1) whether the images were on the defendant's computer; (2) the number of images or videos found; (3) "whether the content of the images was evident from their file names"; and (4) the "defendant's knowledge of and ability to access the storage area for the images" or videos.  Id. at 67 (citations and internal quotation marks omitted).

Lannutti does not contest that the first three factors are satisfied nor could he given the evidence presented to the jury.  First, the images were found on Lannutti's computer under his user profile, "Mikey."  App. 31.  Second, Lannutti's computer contained over fifty video files, forty-five of which contained child pornography, including the six video files mentioned in Count One and other explicit videos referred to in Count Two.  Third, the files bore names that either directly referenced underage sexual behavior or used terms such as "Lolita" that are commonly understood to refer to such conduct.  These facts alone are sufficient to sustain Lannutti's conviction.  Accord United States v. Franz, 772 F.3d 134, 156 (3d Cir. 2014) (holding evidence sufficient despite not meeting all of the Miller factors).

---

[4] Although Miller construed § 2252A, courts have "characterized [these two sections] as 'materially identical'" to one another.  Miller, 537 F.3d at 64 n.10 (quoting United States v. Malik, 385 F.3d 758, 760 (7th Cir. 2004)).

Additional evidence supported the jury's conclusion that Lannutti had knowledge of and the ability to access the illicit files on his computer. One of the investigators, Christopher Kudless, testified to the child pornography files' presence on the "root" of Lannutti's hard drive, which is the "first layer of files and folders presented to a user," undermining a conclusion that the files could have been buried deep in the computer's structure by a virus. App. 24; accord United States v. Pavulak, 700 F.3d 651, 669 (3d Cir. 2012) ("Pavulak was also the likeliest person to have accessed the child-pornography images on the laptop. They were not buried away where an innocent user could have overlooked them."). Kudless also testified that he found two programs on the computer that would facilitate the download of child pornography: a QVOD player, which allows users to download or open a file and place a copy of the file in a computer's media folder, where the files were found in this case; and TOR, a program used by people "when they want to hide what they're doing on line [sic], whether for legitimate purposes or not." App. 35. Kudless also addressed whether a virus could have placed the files on Lannutti's computer, and explained that it would be "inconsistent" with his findings in this case. Supp. App. 3.

In addition to this testimony, evidence of Lannutti's online behavior further supports the jury's conclusion that Lannutti himself downloaded and viewed the videos. Lannutti first came to the attention of Homeland Security because his IP address accessed a website associated with child pornography. Lannutti admitted that he viewed pornography three to four hours per night, and forensic examination revealed that the files on Lannutti's computer were downloaded between midnight and 6:00 a.m. Lannutti

also told law enforcement that he liked "borderline" and "barely legal" videos, and Kudless testified that whoever used Lannutti's user profile on his computer searched for translations of "underage," a word commonly associated with child pornography. App. 38. Finally, Lannutti said he visited Chinese websites, and several videos found in the folder were child pornography videos containing Asian language characters. From this, a juror could easily infer that Lannutti accessed the internet to acquire child pornography.

Taken together, the evidence supports the jury's conclusion that Lannutti both knew about and accessed the child pornography on his computer, satisfying the fourth Miller factor. See Franz, 772 F.3d at 156 (noting that a chain of events can "strongly suggest[] that whoever received the image did so knowingly"). Thus, we cannot say that the record is "devoid of evidence of guilt," Burnett, 773 F.3d at 135, or that "no reasonable juror could accept the evidence as sufficient to support the conclusion of [Lannutti's] guilt beyond a reasonable doubt," Miller, 527 F.3d at 69 (citation and internal quotation marks omitted).

## III

For the foregoing reasons, we will affirm Lannutti's convictions for receipt and possession of child pornography.