**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-2078
_____

UNITED STATES OF AMERICA

v.

ANTHONY ANDREWS,
                                                                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2-14-cr-00366-001)
District Judge: Honorable Joel H. Slomsky

_____

Argued July 14, 2023

_____

Before: PHIPPS, MONTGOMERY-REEVES, and McKEE, *Circuit Judges*

(Opinion filed: July 27, 2023)

Mary K. Healy **[ARGUED]**
Conor Wilson
Office of Federal Public Defender
800 King Street
Suite 200
Wilmington, DE 19801

  *Attorney for Appellant*

Ruth Mandelbaum **[ARGUED]**
Jose R. Arteaga
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

*Attorneys for Appellee*

_____

OPINION[*]

_____

McKEE, *Circuit Judge*:

Anthony Andrews appeals the District Court's denial of his motion to suppress physical evidence and statements the government obtained as a result of a search of a property located at 4311 Westminster Avenue in Philadelphia.[1] For the following reasons, we will reverse the District Court's denial of the suppression motion. Inasmuch as it is clear on this record that the conviction cannot stand as a matter of law without the illegally obtained evidence, we will also vacate Andrews' conviction and sentence and order his immediate release.[2]

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The government's initial cross-appeal (*See* Case No. 2266) is no longer before us, as it was previously dismissed on March 14, 2023.

[2] The District Court exercised jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Additionally, when reviewing the District Court's denial of a suppression motion, "[w]e review its findings

## A. Execution of the Search Warrant[4]

In *Maryland v. Garrison*, the Supreme Court held that law enforcement officers must "discontinue [a] search . . . as soon as they discover[ ]" that a location is in fact subdivided into separate dwelling units, especially if it is unclear which unit belongs to the subject of the warrant.[5] Furthermore, the Court concluded that "the validity of the search . . . depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable."[6] Thus, we must examine whether the agents should have recognized their factual mistake and ended their search of the property, pending further investigation.

---

of fact for clear error, but exercise plenary review over its legal conclusions." *United States v. Tracey*, 597 F.3d 140, 146 (3d Cir. 2010) (citing *United States v. Crandell*, 554 F.3d 79, 83 (3d Cir. 2009)).

[3] To the extent that Andrews still contends that there was no probable cause to issue the warrant to search 4311 Westminster Avenue, we decline to address this argument because he failed to preserve it for appeal. Andrews did not argue that the warrant lacked probable cause before the District Court, and the District Court properly noted that fact in its opinion. *See* App. 27 ("Defendant does not argue that there was no probable cause to issue the search warrant."). "It is well established that a defendant waives his right to raise suppression arguments on appeal that he did not raise in a district court." *United States v. Burnett*, 773 F.3d 122, 131 (3d Cir. 2014) (citing *United States v. Rose*, 538 F.3d 175, 182–84 (3d Cir.2008)).

[4] For the purposes of this opinion, we assume arguendo that the search warrant was sufficiently particular. But, as we shall explain in this section, suppression was still warranted given the problems with the execution of the search warrant.

[5] 480 U.S. 79, 87 (1987); *see also Ritter*, 416 F.3d at 266.

[6] *Garrison*, 480 U.S. at 88.

As a threshold matter, we note that the District Court's analysis of this issue is deficient. For reasons that are not at all apparent, the court relied almost exclusively upon legal arguments and assertions in the government's Response in Opposition to Andrews' motion to suppress, as opposed to the actual suppression record before it.[7] The record from the suppression hearing before the court was severely lacking—Andrews' mother owned the property and was the only witness to testify at the suppression hearing. For reasons known only to the government, it did not call any witnesses. Accordingly, none of the agents who executed the search warrant testified. Rather, the government relied solely on the affidavit of probable cause that the warrant was based upon. It did so at its peril as this record is sorely inadequate to support the conclusion that the search was executed in a manner that was consistent with the prohibitions of *Garrison.* It is not for the District Court to "supply the testimony that the government failed to elicit during the suppression hearing."[8] "[T]he government must [now] live with its decision to [offer only the affidavit] to make a record of the events [surrounding the execution of the search of 4311 Westminster Avenue]."[9]

---

[7] Specifically, the District Court found that "upon entering the premises, the agents acted consistent with their belief that the dwelling was a single family residence and that it was not occupied by multiple residents." App. 34. It stated that the agents conducted a protective sweep and limited their search to the second-floor bedroom where Andrews resided but cites only to the government's response brief for support.

[8] *Ritter*, 416 F.3d at 268 (quoting *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002)).

[9] *Id*.

Accordingly, we review the agents' execution of the search within the context of the limited record created at the suppression hearing. In doing so, we are fully aware of the fact that we must "allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants."[10] We are guided by the fact that "[t]he officers' conduct and the limits of the search [are] based on the information available as the search proceed[s.]"[11]

Nevertheless, on this record, we are unpersuaded that the agents' entry into what was described as a single residence, but which bore indicia of a multi-unit property pursuant to *Garrison*, was merely an "honest mistake" that should not invalidate the execution of the warrant. Andrews' mother's testimony from the suppression hearing establishes that when the agents arrived at the front door of the property and entered the first floor, they either saw or chose to ignore several things that should have put them on notice that they were likely entering a multi-family dwelling.

The photographic exhibits and testimony of Andrews' mother established that three doorbells are plainly visible to someone approaching and entering the building.[12] Second, just a few feet after going through the front door, the agents had to go through a second door to enter the first floor of the property. Third, there was a sign on the inside of

---

[10] *Id.* at 267 (quoting *Garrison*, 480 U.S. at 87).

[11] *Garrison*, 480 U.S. at 87; *Ritter*, 416 F.3d at 267.

[12] Further, we are not moved by the District Court's assertion that the presence of multiple doorbells was immaterial since they were unlabeled. As Andrews' mother advised in her testimony, no names were included on the doorbells for privacy reasons. The court did not suggest that this testimony was not credible.

the second door asking residents to "keep the door closed at all times."[13] Finally, two electric utility boxes were located on the left wall on the first floor, each marked to indicate that it was for a separate unit. Given this evidence, it is clear as a matter of law that the agents should have stopped the search.[14] Accordingly, their failure to do so was unreasonable.

## B. The Good-faith Exception and the Exclusionary Rule

The government argues that the good-faith exception to the exclusionary rule must be applied. To determine whether this exception applies, we examine "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."[15] Typically, the mere existence of a warrant suffices to prove that an officer conducted a search in good faith.[16] "Yet there are situations in which an officer's reliance on a warrant would not be reasonable and would not trigger the exception," such as:

> (1) [when] the magistrate [judge] issued the warrant in reliance on a deliberately or recklessly false affidavit;
> (2) [when] the magistrate [judge] abandoned his judicial role and failed to perform his neutral and detached function;
> (3) [when] the warrant was based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'; or
> (4) [when] the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.[17]

---

[13] App. 157–58.

[14] *See Garrison*, 480 U.S. at 87. This does not, of course, mean that they had to discontinue their investigation.

[15] *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984).

[16] *United States v. Hodge*, 246 F.3d 301, 307–08 (3d Cir. 2001).

[17] *Id*. at 308 (citing *United States v. Williams*, 3 F.3d 69, 74 n.4 (3d Cir. 1993)).

Here, the fourth exception is especially relevant. As explained above, the agents had ample opportunity to realize upon entering the property that the warrant was facially deficient, yet they proceeded with their search anyway. Moreover, the search's execution was not the agents' first indication that 4311 Westminster Avenue was a multi-unit property. Prior to obtaining the warrant, the agents reviewed two property records showing that 4311 Westminster Avenue had multiple units. City records listed the property as a converted triplex. Additionally, the Accurint records that the agents examined showed that multiple people had lived at the property, in different apartments. Thus, prior to executing the search, the agents were aware of records indicating that 4311 Westminster Avenue was a multi-unit property, and they carried this knowledge into the search. The doorbells, entrance, sign, and electrical boxes should have confirmed for them that this was in fact a multi-unit property, as those records indicated, and not a single residence, as described in the warrant. On this record, we must conclude that the agents were either reckless or willfully blind in ignoring the indicia of a multiple unit dwelling which we have just elaborated and continuing to search.

We understand, of course, that "exclusion has always been our last resort, not our first impulse."[18] As the Supreme Court has explained, "[t]he fact that a Fourth Amendment violation occurred—*i.e.,* that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies."[19] Instead, "[t]o trigger the

---

[18] *Herring v. United States*, 555 U.S. 135, 140 (2009) (internal quotation marks omitted).
[19] *Id*. (citing *Illinois v. Gates*, 462 U.S. 213, 223 (1983)).

exclusionary rule, law enforcement conduct must be 'deliberate, reckless, or grossly negligent,' or involve 'recurring or systemic negligence.'"[20] This is because the ultimate purpose of the exclusionary rule is to "safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved."[21] We realize that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion."[22] But here, the benefit of suppression is neither marginal nor nonexistent. The agents exceeded the scope of authority conferred by the warrant when they either ignored or disregarded the risk that they had entered a multi-family residence. In ignoring that risk, the search assumed "the character of the wide-ranging exploratory searches the Framers intended to prohibit."[23] Suppressing the physical evidence and statements obtained[24] under these circumstances advances the privacy interests that are the foundation of the Fourth Amendment. It reinforces the sanctity of one's residence and deters reckless police conduct in the execution of search warrants.

II.

---

[20] *United States v. Caesar*, 2 F.4th 160, 169–70 (3d Cir. 2021) (quoting *Herring*, 555 U.S. at 143–44).

[21] *Leon*, 468 U.S. at 906 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)).

[22] *Id*. at 922.

[23] *Garrison*, 480 U.S. at 84.

[24] The potentially incriminating statements Andrews gave to Special Agent Wescoe during the search warrants suppression as well. "Evidence obtained through unreasonable searches and seizures must be suppressed as 'fruit of the poisonous tree.'" *United States v. Bey*, 911 F.3d 139, 144 (3d Cir. 2018) (quoting *United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006)).

For the foregoing reasons, we will reverse the District Court's order denying Andrews' motion to suppress,[25] we will vacate both his conviction and sentence, and order his immediate release from custody.[26]

---

[25] Judge Phipps does not join Part I, but he agrees with the core conclusions that the officers' continuation of the search was unreasonable and sufficiently so to allow application of the exclusionary rule. He arrives at those conclusions based on not just the evidence at the suppression hearing – at which no officer testified – but also on trial testimony that the officers conducted a protective sweep of the premises and did a separate walkthrough to make a video recording of the structure, all prior to the search. From those, it may reasonably be inferred that they discovered a number of the other attributes of the structure, such as separate kitchens and bathrooms on each floor, indicating that it was a multi-unit dwelling. *See Gov't of V.I. v. Williams*, 739 F.2d 936, 939 (3d Cir. 1984) (explaining that an appellate court "is not restricted to the evidence presented at the suppression hearing where the motion was denied").

[26] Given our conclusion, we need not address Andrews' claim that the indictment was constructively amended. Moreover, we note that Andrews has already served almost the entirety of his original ten-year sentence—he is otherwise scheduled to be released on October 23, 2023.