**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1762
_____

UNITED STATES OF AMERICA

v.

TYLEE BROWN,
Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Crim. No. 3:20-cr-00262-001)
District Judge:  Honorable Robert D. Mariani
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 16, 2025
_____

Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, MONTGOMERY-REEVES and McKEE, <u>Circuit</u>
<u>Judges</u>

(Filed:  August 12, 2025)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, <u>Chief</u> <u>Judge</u>.

Tylee Brown moved to suppress evidence found during the search of a vehicle in which he was a passenger.  Brown argues that the police violated his Fourth Amendment rights not only when officers detained him outside the vehicle, but also when they later stopped the car, prolonged the stop, and searched the car.  For the reasons below, we will affirm the judgment of the District Court.

I.

We write primarily for the parties and so recite only those facts pertinent to our decision.  Police officers were investigating a rural lot in Susquehanna County, Pennsylvania after receiving a report for stolen property allegedly located at the lot.  As the officers entered the lot, where it was raining heavily, a Volkswagen sedan pulled up to the driveway.  The driver of the vehicle, Edwin Blaisure, exited and spoke to the officers.  They discovered that Blaisure had an active arrest warrant out of New York, prompting the officers to take him into custody.

As the officers arrested Blaisure, another vehicle arrived on the scene.  A Chrysler sedan with heavily tinted windows approached the driveway, but then abruptly stopped, backed up, and became stuck in the mud along the roadway.  The front-seat passenger, Brown, then exited the vehicle and began pushing it from behind.  After this unsuccessful attempt to dislodge the car, Brown ran into the wooded area surrounding the lot, unbeknownst to the officers as they approached the Chrysler.  When the officers eventually realized Brown's flight, they pursued and apprehended him.  Brown explained that he ran because he was on parole and had marijuana in his possession, which he said

2

he discarded into the woods.  The officers did not locate any marijuana and began escorting Brown back to the lot in handcuffs.

Other officers, meanwhile, were questioning the remaining occupants of the Chrysler.  The driver and owner of the vehicle, Heriberto Delmoral, stated that he came from Philadelphia to the lot to have his car mirrors repaired.  Delmoral also explained that Brown paid him $200 to drive him to the lot, where one of Brown's vehicles was being painted.  Neither Delmoral nor the other occupants of the vehicle, Alisha Blye and her young child, had physical identification in their possession.  The questioning officer observed that the journey from Philadelphia to the rural lot would have taken five hours round-trip.  The officer also noticed that Delmoral was winking and nodding at him as they were speaking, which the officer found "extremely" unusual.  Appendix ("App.") 132.

Brown and the officers then returned to the lot.  The officers conducted a pat-down of Brown, noting to him that he "ran for no reason." App. 19.  The pat-down uncovered two cellphones in Brown's possession, which the officers associated with trafficking of contraband.  During the pat-down, the officers also asked Brown about the rather long route for customary car repairs.  Brown responded that he knew the lot owner and had left another car, a Range Rover, to be repaired as well, but officers could not locate any Range Rover on the premises.  Brown also clarified that his travel originated in Norristown (a suburb of Philadelphia) and included a stop in Scranton before their arrival to the lot.

3

The officers, suspecting that the Chrysler contained contraband, asked Delmoral for consent to search the car, which he refused. The police then called for a canine unit to inspect the vehicle, which arrived forty minutes later. The drug-sniffing dog, Khan, alerted the handler twice as they inspected the car, indicating the presence of controlled substances. The officers searched the car, finding a tote bag containing crystal methamphetamine in the trunk. Brown, Delmoral, and Blye were arrested.

A federal grand jury indicted Brown for conspiring to distribute and to possess with intent to distribute more than 500 grams of methamphetamine, as well as possessing with intent to distribute more than 500 grams of methamphetamine. Brown moved to suppress the evidence obtained from the Chrysler, arguing that the police lacked reasonable suspicion to detain him or the vehicle, improperly prolonged the stop to investigate other crimes, and had no probable cause to search the car. Brown also sought to suppress his statements from the day of his arrest, which he said contravened Miranda v. Arizona, 384 U.S. 436 (1966).

The District Court granted in part and denied in part his motion. It first held that Brown lacked Fourth Amendment standing to challenge the vehicle's detention and search and that reasonable suspicion supported Brown's detention. The only police action that implicated Brown's privacy interests was his detention in the woods, according to the District Court, but reasonable suspicion supported his detention. The District Court also held that even if Brown had standing as to the stop and search of the vehicle, those investigatory actions would not have violated the Fourth Amendment either. The District Court lastly held that because Brown was subject to custodial

4

interrogation during his initial detention, his un-Mirandized statements about his marijuana possession and parole status were inadmissible. But the District Court noted that this conclusion did not affect the admissibility of any physical evidence recovered at the scene.

Brown then entered into a conditional plea agreement, reserving the right to appeal the denial of his motion to suppress. The District Court sentenced him to 228 months of imprisonment. Brown timely appealed.

II.[1]

A.

The District Court concluded that reasonable suspicion justified the initial detention of the Chrysler, and probable cause supported the ensuing search. We agree. Assessing reasonable suspicion requires considering the "totality of the circumstances to determine whether 'the detaining officers . . . [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" United States v. Johnson, 592 F.3d 442, 448–49 (3d Cir. 2010) (alteration in original) (quoting United States v. Brown, 448 F.3d 239, 246 (3d Cir. 2006)). And "a dog's positive alert while sniffing the exterior of the car provides an officer with the probable cause necessary to search the car without a warrant." United States v. Pierce, 622 F.3d 209, 213 (3d Cir. 2010).

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction to review Brown's conviction and sentence under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). This Court reviews the denial of a motion to suppress for clear error as to a district court's factual findings but exercises plenary review over its legal determinations. See United States v. Stewart, 92 F.4th 461, 466 (3d Cir. 2024).

The investigatory actions here complied with the Fourth Amendment, as the District Court concluded. The vehicle's presence in a "haven for illegal activity," App. 176 — a remote lot where "drugs and stolen property" were suspected, id., someone had recently been arrested, and another had just run into the woods — combined with its evasive maneuvering and likely violation of Pennsylvania law on tinted windows, allowed the police to temporarily detain the Chrysler and its occupants. That stop was also not unreasonably delayed, given the time required to procure a drug-sniffing dog in the area.[2] See United States v. Garner, 961 F.3d 264, 272 (3d Cir. 2020). And as the District Court noted, the dog positively alerted to the presence of drugs, the handler testified to the dog's certification and experience, and Brown offers nothing to rebut the credibility of those alerts. See Florida v. Harris, 568 U.S. 237, 248 (2013). Brown's challenge to the stop and search of the Chrysler is therefore unavailing.[3]

B.

We likewise agree with the District Court that the circumstances here support the officers' reasonable suspicion that Brown was engaged in criminal activity. First, the remote lot where Brown was driven to was well known for criminal activity, with one officer testifying that it was "an area involved in high crime" and "a haven for illegal

---

[2] We do not decide whether unreasonable delays to investigatory stops under Rodriguez v. United States, 575 U.S. 348 (2015), apply to non-traffic stops as here.

[3] Brown's argument that he has standing to challenge the search is unpersuasive. Brown fled from the vehicle, effectively abandoning any privacy interest he had in the items searched therein. See United States v. Burnett, 773 F.3d 122, 127, 132 (3d Cir. 2014) (holding that a former passenger of a car — who did not own the car and voluntarily left the car — did not have standing to challenge the search of the car).

activity, especially, regarding drugs and stolen property." App. 171, 176. Second, the officers were already at the scene to investigate stolen property. Third, the officers had already arrested another individual who had an active warrant out for his arrest. Fourth, Brown, unprovoked, ran into a wooded area despite the cool temperatures and rainfall so heavy that the vehicle became stuck in the mud.

Unlike Brown suggests, these circumstances are not akin to United States v. Navedo, 694 F.3d 463 (3d Cir. 2012). That case involved testimony that the officers did not "observe[] any conduct that would have suggested that Navedo was doing anything illegal," but rather observed Navedo standing on his apartment building's porch and running up the stairs into his apartment building where he was tackled. Id. at 465–66. By contrast, Brown drove a long distance to a remote location; the officers were already on the scene investigating illegal activity at that address; the officers had already arrested on individual on the scene; and Brown, unprovoked and without the police announcing themselves, ran into a heavily wooded area during what he describes as "pouring rain." Brown Br. 10. In light of the totality of the circumstances, the police had reasonable suspicion to detain Brown to continue their investigation.

III.

For the foregoing reasons, we will affirm the judgment of the District Court.