**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1679
_____

UNITED STATES OF AMERICA

v.

DKYLE JAMAL BRIDGES,
Appellant
_____

No. 21-2122
_____

UNITED STATES OF AMERICA

v.

KRISTIAN JONES,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Crim Nos. 2:18-cr-00193-001 and 002)
District Judge: Honorable Nitza I. Quiñones Alejandro
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 11, 2022
_____

Before: GREENAWAY, JR., MATEY, and RENDELL, *Circuit Judges*

(Opinion Filed: September 15, 2022)
_____

OPINION[*]

_____

GREENAWAY, JR., *Circuit Judge*.

Appellants Dkyle Jamal Bridges and Kristian Jones were convicted of sex-trafficking offenses. On appeal, they bring various challenges to their judgments of conviction, including the District Court's pre-trial and evidentiary rulings. In addition, Bridges challenges the procedural and substantive reasonableness of the sentence imposed. For the following reasons, we will affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

From 2012 to 2017, Appellants and an additional co-defendant ran a sex trafficking scheme whereby they forcibly trafficked several minor and adult female victims in motels located in Pennsylvania and Delaware. Bridges was responsible for organizing the scheme, whereas Jones was responsible for logistics. In trafficking these victims, Appellants subjected the girls and women to harsh conditions and violence.

The Government charged Appellants with forcibly sex trafficking five minor and adult female victims. After a jury trial, Appellants were convicted based on, *inter alia*, the trial testimony of three victims (N.G., Z.W., and J.S.). The two remaining named victims, B.T., and L.C., did not testify; however, statements attributed to them were admitted at trial.

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Specifically, Appellants were found guilty of conspiracy to commit forcible sex trafficking of adults and minors in violation of 18 U.S.C. § 1594(c) for conduct that spanned from 2012 to 2017 (Count 1); and forcible sex trafficking of minors, B.T. (Count 4), N.G. (Count 5), and L.C. (Count 6), in violation of 18 U.S.C. § 15914(a)(1) and (b)(1)-(2), and (c). Bridges was also convicted of forcible sex trafficking of two adults, Z.W. (Count 2) and J.S. (Count 3), in violation of 18 U.S.C. § 15914(a)(1) and (b)(1). The District Court sentenced Bridges to 420 months' imprisonment and Kristian Jones to 240 months' imprisonment.

On appeal, the following rulings from the District Court are being challenged: (1) the denial of Appellants'[1] motions for severance; (2) the denial of Bridges's suppression motion and request for a *Franks* hearing; (3) the denial of Jones's suppression motion; (4) the admission of hearsay statements from B.T., L.C., and H.N. (a man who had solicited prostitution), none of whom testified at trial, JA1905-15; (5) the admission of evidence purportedly showing Bridges's uncharged prior bad acts, JA1356-59; (6) the admission of expert testimony; and (7) Bridges's sentence.[2]

---

[1] Where we use the term "Appellants" we are referring to challenges brought by both Bridges and Jones. The use of "Bridges" and "Jones" denotes that that particular defendant is bringing a challenge.

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II. DISCUSSION

### A. Motion for Severance

Appellants each filed pretrial motions for severance. On appeal, they contend the District Court erred in denying their motions for severance because they suffered unfair prejudice. "We review the District Court's denial of a severance for abuse of discretion." *United States v. Heatherly*, 985 F.3d 254, 271 (3d Cir. 2021) (internal quotation marks and citation omitted).

Where, as here, there are codefendants charged in a single conspiracy, "[w]e presume that courts will try codefendants jointly." *Id.* (citation omitted). "A defendant seeking a new trial due to the denial of a severance motion must show that the joint trial led to clear and substantial prejudice resulting in a manifestly unfair trial[,]" which is "a demanding standard that requires more than [m]ere allegations of prejudice[.]" *United States v. Scarfo*, 41 F.4th 136, 182 (3d Cir. 2022) (internal quotation marks and citation omitted).

Appellants have not met their heavy burden to demonstrate "clear and substantial prejudice." *Id.* (internal quotation marks and citation omitted). They essentially assert "that some evidence applied to some defendants more than others or was more damaging to some defendants." *Heatherly*, 985 F.3d at 271 (citation omitted). As we have previously held, this is insufficient. *Id.*

Importantly, Appellants have failed to demonstrate that a jury would be unable to compartmentalize the evidence as it relates to each defendant. *Scarfo*, 41 F.4th at 182 (citation and internal quotation marks omitted) (The "critical issue" is "not whether the

4

evidence against a co-defendant is more damaging but rather whether the jury will be able to compartmentalize the evidence as it relates to separate defendants in view of its volume and limited admissibility."). Considering each count involved a distinct victim, a jury would not have had difficulty compartmentalizing the evidence. Moreover, the District Court appropriately instructed the jury to keep the evidence and defendants separate.

## B. Motions to Suppress

Bridges challenges the District Court's denial of his suppression motion and request for a *Franks* hearing related to the search of his vehicle. Additionally, Jones appeals the District Court's denial of his suppression motion related to the search of a motel room where he was found with N.G. and L.C. "We review the denial of a motion to suppress under a mixed standard: clear error for factual findings and de novo for issues of law." *United States v. Jarmon*, 14 F.4th 268, 271 (3d Cir. 2021), *cert. denied,* 142 S. Ct. 930 (2022) (citation omitted).

### 1. Search of Bridges's Vehicle

Based on information from a confidential informant, the police conducted a sting operation at the Motel 6 in Northeast Philadelphia on July 12, 2017. The police had learned from a confidential informant that Bridges was trafficking a young woman. Law enforcement traced the young woman's phone number, which had been provided by the confidential informant, and arranged an undercover commercial sexual encounter. While at the Motel 6, the police found Bridges and a young woman in a Taurus. Inside the Taurus, there were multiple cellphones and boxes of condoms in plain view. The police

5

subsequently detained Bridges.  After determining that Bridges had a suspended license, the police impounded Bridges's vehicle.

The following day, FBI Special Agent Nicholas Grill prepared a search warrant where he described a sex trafficking investigation and identified Bridges as the main suspect.  Special Agent Grill explained how the confidential informant had provided information about a young woman, who he referred to as Victim Three.[3]  He then described the sting operation, noting that the Taurus Bridges and the young woman arrived in had been previously associated with Bridges.  Finally, Special Agent Grill indicated that during an interview of Victim Three, she stated that Bridges was her pimp and had driven her to the Motel 6.

The District Court correctly denied Bridges's motion to suppress.  The police had probable cause to stop Bridges, impound his vehicle, and search it.  As an initial matter, law enforcement was justified in stopping Bridges because there was a reasonable suspicion, based on the ongoing investigation and undercover sting operation, that Bridges was at the Motel 6 to traffic victims.  This pre-existing suspicion combined with the objects in plain view in the vehicle gave rise to probable cause to believe that the vehicle contained evidence of sex trafficking.  Thus, the police were justified in towing the vehicle to search it at a later time under the automobile exception. *See California v. Acevedo*, 500 U.S. 565, 570 (1991) ("[I]f the police have probable cause to justify a warrantless seizure of an automobile on a public roadway, they may conduct either an

---

[3] Victim Three was later identified as B.T.

6

immediate or a delayed search of the vehicle."). The search warrant was thus "prudent . . . [but] unnecessary," given the automobile exception already justified a warrantless search. *See United States v. Riedesel*, 987 F.2d 1383, 1392 (8th Cir. 1993).

### 2.      *Franks* Hearing

Bridges argues that he was entitled to a *Franks* hearing because the search warrant affidavit contained false statements.

> We review for clear error a district court's determination regarding whether false statements in a warrant application were made with reckless disregard for the truth. Next, after putting aside any false statements made with reckless disregard for the truth, we review de novo a district court's substantial-basis review of a magistrate judge's probable cause determination.

*United States v. Desu*, 23 F.4th 224, 235 (3d Cir. 2022).

For a defendant to obtain an evidentiary hearing challenging the validity of a search warrant under *Franks v. Delaware*, 438 U.S. 154 (1978), he "must establish (1) that a warrant application contained false statements made with reckless disregard for the truth and (2) that the remaining truthful statements, standing alone, do not establish probable cause." *Desu*, 23 F.4th at 234 (citing *Franks*, 438 U.S. at 171–72). To do so, a "defendant must prove his allegations by a substantial preliminary showing." *Id.* (internal quotation marks and citations omitted).

We have held that false statements may include both omissions and assertions. *Id.* Whereas "omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know, . . . assertions are made with reckless disregard for the truth when an officer has

7

obvious reasons to doubt the truth of what he or she is asserting." *Wilson v. Russo*, 212

F.3d 781, 783 (3d Cir. 2000).

Bridges's primary argument on appeal is that Special Agent Grill's affidavit

falsely stated that a confidential source had provided the statements about Victim Three

when in fact the source was Victim Three's mother. He contends that such an omission

was significant because a judge might view information provided by a family member

differently than information by a confidential informant. *Id.* We reject this argument.

The disclosure of the confidential informant's identity was not material and thus would

not constitute an omission. *Russo*, 212 F.3d at 783; *Desu*, 23 F.4th at 236. Bridges's

remaining arguments purporting to show that the statements about Victim Three were

false or unreliable, are meritless. He has neither demonstrated that Special Agent Grill

recklessly omitted material facts nor that he made statements that he had obvious reasons

to doubt. *Russo*, 212 F.3d at 783. Thus, the District Court did not err by not granting

Bridges a *Franks* hearing.

### 3.    Search of Jones's Room

As described in further detail below, Jones was arrested after the Tinicum police

interviewed H.N., a man who had solicited prostitution at a Motel 6 near the Philadelphia

airport. Based on information provided during this interview, the Tinicum police went to

the Motel 6, entered a room registered to Jones's brother, and detained, frisked, and

ordered Jones to empty his pockets without a warrant. Jones argues that the Tinicum

police violated his Fourth Amendment rights by conducting this warrantless search. He

further contends the search warrant for his cell phone following his arrest was too general

8

and that the scope of information extracted from his cell phone was overly broad. Before reaching the merits of Jones's arguments we must consider whether he has standing.

"[S]tanding in the Fourth Amendment context is shorthand for a legitimate expectation of privacy." *United States v. Jackson*, 849 F.3d 540, 550 n.7 (3d Cir. 2017) (internal quotation marks and citation omitted). "An individual challenging a search has the burden of establishing that he had a reasonable expectation of privacy in the property searched and the item seized." *United States v. Burnett*, 773 F.3d 122, 131 (3d Cir. 2014) (citation omitted). In determining whether a defendant has standing, we analyze whether the defendant's expectation of privacy was both subjectively and objectively reasonable. *Id.*

Although we have not squarely addressed whether a defendant has a reasonable expectation of privacy in a hotel room under someone else's name, our case law in other contexts is instructive. For example, we have concluded that defendants lacked standing where there was "no evidence that the [defendants] were at [the third-party's] apartment for any purpose other than to engage in drug-related activities." *United States v. Perez*, 280 F.3d 318, 338 (3d Cir. 2002). We have also held that "a passenger in a car that he neither owns nor leases typically has no standing to challenge a search of the car." *Burnett*, 773 F.3d at 131. (internal quotation marks and citation omitted).

Here, Jones primarily contends he has standing because the room was registered to a family member, he had a key to the hotel room, and he was an overnight guest. Jones Br. 21-40. Jones has not met his burden in establishing standing. He has not offered any evidence suggesting that he had a legitimate purpose in staying in the room (in fact, H.N.

9

confessed to having a commercial sexual encounter there moments earlier), that he paid for the room, or that his personal belongings were found there. *Id. See United States v. Carr,* 939 F.2d 1442, 1446 (10th Cir.1991) (holding a defendant did not have a legitimate expectation of privacy in a hotel room that was not registered to him or anyone he was sharing it with); *see also United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000) (citations omitted) (in determining "whether an individual has a reasonable expectation of privacy in a hotel room, courts have looked to such indicia as whether the individual paid and/or registered for the room or whether the individual's personal belongings were found inside the room"). Hence, the District Court correctly determined that Jones lacked standing to challenge the search of the motel room and the motion to suppress the evidence seized in the search.

Although Jones does not have standing to contest the entry into the motel room, he does have standing to contest the seizure of his cell phone, which had been in his pocket. Despite having standing, this claim also fails. The police arrested Jones following their discovery of an outstanding warrant for his arrest. The police thus were permitted to conduct the search of Jones's phone as a search incident to arrest. *United States v. Nasir*, 17 F.4th 459, 466 (3d Cir. 2021). Furthermore, the warrant for the search of the phone was sufficiently particularized, as it specified the item to be searched and the crime for which police were seeking evidence. *See, e.g.*, *United States v. Palms*, 21 F.4th 689, 699 (10th Cir. 2021).

## C.    Admission of Hearsay Statements

Appellants contend that the statements from the two victims who did not testify, B.T. and L.C., and statements from H.N. were testimonial and should not have been admitted.  As support for their position, they argue that these statements were either given to law enforcement or introduced to prove the elements of the offenses.

"We review the district court's evidentiary rulings principally on an abuse of discretion standard."  *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010) (citation omitted).  "Where, however, a party fails to object in a timely fashion or fails to make a specific objection, our review is for plain error only."  *United States v. Moore*, 375 F.3d 259, 262 (3d Cir. 2004) (citation omitted).  "[T]o the extent [the District Court's rulings] are based on a legal interpretation of the Federal Rules of Evidence" we "exercise plenary review."  *Green*, 617 F.3d at 239 (internal quotation marks and citation omitted).

Pursuant to the Confrontation Clause of the Sixth Amendment, a criminal defendant "shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  In determining whether to admit an out-of-court statement by a non-testifying witness, we first consider whether the statement was testimonial.  *Rolan v. Coleman*, 680 F.3d 311, 327 (3d Cir. 2012) (citation omitted).  In this context, a statement is testimonial if it is "made for the purpose of establishing or proving some fact," which is "potentially relevant to later criminal prosecution."  *United States v. Gonzalez*, 905 F.3d 165, 201 (3d Cir. 2018) (internal quotation marks and citations omitted).  "If the absent witness's statement is testimonial, then the Confrontation Clause requires unavailability and a prior opportunity for cross-examination."  *United States v.*

11

*Moreno*, 809 F.3d 766, 774 (3d Cir. 2016) (internal quotation marks and citation omitted).

### 1. B.T.'s Statements to her Mother and Grandmother

B.T.'s mother and grandmother testified that on several occasions B.T. called them while crying and told them about Bridges's treatment of her. They explained that B.T. would often ask them to pick her up whenever Bridges kicked her out of a car or otherwise left her. Moreover, B.T.'s mother testified that B.T. had told her that Bridges was her boyfriend and that Bridges was J.S.'s pimp.

The District Court did not abuse its discretion in admitting B.T.'s mother's and grandmother's testimony concerning Bridges's treatment of B.T. These statements were not made "with the primary purpose of creating an out-of-court substitute for trial testimony." *Lambert v. Warden Greene SCI*, 861 F.3d 459, 470 (3d Cir. 2017). Rather, B.T. made these statements for the purpose of obtaining assistance from her family members and confiding in them.

### 2. H.N.'s Statements to Officer Lis

Officer Lis, a Tinicum police officer, testified about statements from H.N., who as described above was stopped and questioned following a commercial sexual encounter. Officer Lis testified that H.N. told him that H.N. had solicited prostitution services by responding to an ad from Backpage and that such services were performed at the Motel 6. Although H.N.'s statements were testimonial, the District Court did not plainly err in admitting Officer Lis's testimony. *See United States v. Dukagjini*, 326 F.3d 45, 59 (2d Cir. 2003) (where a defendant "failed to preserve [his] objection to the Confrontation

12

Clause violation . . . , we evaluate the district court's admission of testimony in violation of the Confrontation Clause for plain error"). Considering Officer Lis's testimony played a small role in the Government's case, there was no violation of a substantial right.

### 3. B.T.'s and L.C.'s Statements to Law Enforcement

Corporal Joseph Kendrick and FBI Agent C.J. Jackson testified about an interview conducted following L.C.'s and B.T.'s arrests for prostitution. Specifically, Corporal Kendrick testified that B.T. provided her ex-boyfriend's name and contact information. Corporal Kendrick then ran this information through the police database and discovered it matched the information for Bridges. Agent Jackson testified that B.T. mentioned Bridges's name during her interview. He also testified that L.C. had identified Bridges as the person who had brought her to the hotel. While B.T.'s and L.C.'s complete statements may have been testimonial, Corporal Kendrick's and Agent Jackson's testimony just vaguely described the information obtained—such as Bridges's name and phone number—they did not quote any *assertion* by B.T. or L.C. Thus, the statements attributed to B.T. and L.C. were not testimonial.

## D. Admission of Evidence Purportedly Subject to 404(b)

Appellants contend that testimony from other women not named in the indictment constituted impermissible Rule 404(b) evidence. Bridges likewise argues that testimony about his confrontation with R.S. (another man who had solicited prostitution), and law enforcement's investigation into Bridges constituted impermissible Rule 404(b) evidence.

Pursuant to Rule 404(b), "[e]vidence of . . . [a] crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the

13

person acted in accordance with the character." Fed. R. Evid. 404(b). However, it may be admitted for "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* In determining whether evidence is properly admissible under Rule 404(b), we apply the Supreme Court's test from *Huddleston v. United States*, 485 U.S. 681 (1988), which requires that the "evidence of uncharged crimes or wrongs must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it." *Green*, 617 F.3d at 249.

Rule 404(b) does not apply to evidence of acts that are intrinsic to the offense because such evidence is "part and parcel of the charged offense." *United States v. Williams*, 974 F.3d 320, 357 (3d Cir. 2020) (internal quotation marks and citation omitted). Evidence is considered intrinsic "if it is inextricably intertwined with the charged offense." *United States v. Cross*, 308 F.3d 308, 320 (3d Cir. 2002) (internal quotation marks and citation omitted). "[C]ourts have afforded the prosecution considerable leeway to present evidence, even of unalleged acts within the indictment period, that reflects a conspiratorial agreement or furtherance of the conspiracy's illegal objectives." *Williams*, 974 F.3d at 357 (citations omitted).

### 1. Testimony from Other Women Not Named in the Indictment

The District Court permitted testimony from women not named in the Indictment, but limited such testimony to the women's observations of Appellants' treatment of the named victims; they could not testify as to their status. Appellants challenge the testimony of Z.W., M.T., and D.W. They argue that Z.W.'s and D.W.'s testimony

14

impermissibly identified other women not named in the indictment and that M.T.'s and D.W.'s testimony impermissibly identified themselves as victims.

However, the testimony from Z.W., M.T., and D.W. was permissible as intrinsic evidence. It demonstrated both how Appellants trafficked the named victims and how other women played a role in such activities. For example, M.T.'s testimony about training Z.W. and D.W.'s testimony about B.T.'s commercial sexual encounters were directly relevant for proving that Z.W. and B.T. were sex trafficked, Counts 2 and 4 respectively. *See id.* (citation omitted). Moreover, M.T.'s and D.W.'s testimony about their interactions with Appellants established Appellants' modus operandi for trafficking the named victims. *See United States v. Carson*, 870 F.3d 584, 600 (7th Cir. 2017) (permitting testimony from other women not named in the indictment as direct evidence of the crime or corroborating evidence).[4]

### 2. Bridges's Confrontation with R.S.

At trial, Z.W., R.S. (a man who had solicited prostitution), and a state detective testified about a confrontation between Bridges and R.S. that occurred following a commercial sexual encounter. In short, after R.S. attempted to take back some money when Z.W. denied him more sex, Bridges entered the room and brandished his knife in R.S.'s face. R.S., fearing for his life, retreated and offered to return the money. In

---

[4] We also reject Bridges's argument that the testimony necessarily inferred that these other women were prostitutes. Given the tenor and substance of the testimony, the jury could have just as easily surmised they were mere observers or co-conspirators.

15

response, Bridges took $140 from R.S.'s wallet and his cell phone.  Following the confrontation, R.S. contacted his employer and asked them to contact the police

The District Court admitted the evidence concerning the confrontation but excluded evidence that Bridges pleaded guilty to a state misdemeanor theft charge as a result of it.  It did not abuse its discretion in doing so.  As Bridges seemingly concedes in objecting to Probation Office's calculation of his criminal history score in his Presentence Report (the "PSR"), such evidence was intrinsic as to Count 2.  PSR at 41 ("The defense contends that [the theft conviction] was included as part of the instant offense").  It established that Bridges provided security to Z.W. and that he had control over the financial aspects of her commercial sexual encounters.  *See Williams*, 974 F.3d at 357 (citation omitted).  It also established that Bridges used force in sex trafficking Z.W.

### 3. Investigation Into Bridges

At trial, three law enforcement officers, Corporal Kendrick, Corporal Odom, and FBI Agent Jackson testified that Bridges was being investigated for sex trafficking and they described how they obtained information about him.  To the extent, as Bridges now argues, the District Court failed to both conduct a *Huddleston* analysis concerning Corporal Kendrick's and Corporal Odom's testimony that Bridges objected to during trial and to issue a limiting instruction to the jury, such errors were harmless.  Corporal Kendrick's and Corporal Odom's testimony constituted a minor portion of the Government's case.  Three of the named victims testified and the Corporals' testimony simply explained the course of the investigation.  *United States v. Brown*, 765 F.3d 278, 295 (3d Cir. 2014) (internal quotation marks and citation omitted) ("The test for harmless

16

error is whether it is highly probable that the error did not contribute to the judgment."). Moreover, the testimony itself was not unduly prejudicial because it was brief and did not detail the prior investigation.

Similarly, the District Court did not plainly err in admitting the unobjected testimony from Corporal Odom and Agent Jackson. Given that "one proper purpose under Rule 404(b) is supplying helpful background information to the finder of fact" such as evidence explaining why a criminal defendant was under investigation, *Green*, 617 F.3d at 250 (citation omitted), it cannot be said that any error was "clear or obvious." *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 238 n.17 (3d Cir. 2017) (citation omitted).

### E.    Admission of Expert Testimony

Appellants argue that the District Court erred in admitting the expert testimony of Dr. Shannon Wolf, Ph.D. We review the admissibility of expert testimony for an abuse of discretion. *United States v. 68.94 Acres of Land*, 918 F.2d 389, 392 (3d Cir. 1990). If we determine that the District Court abused its discretion, "we review de novo whether that error was prejudicial or harmless." *United States v. Schneider*, 801 F.3d 186, 200 (3d Cir. 2015).

As relevant here, Dr. Wolf testified about the psychological effects of sexual abuse. She explained that sexual abuse victims sometimes experience trauma bonds whereby they are loyal to their abusers or feel a strong sense of attachment to their abusers. Dr. Wolf further testified that she did not know the Appellants or victims in the case and that she was not opining on the credibility of any of the victims.

17

Pursuant to Rule 702 of the Federal Rules of Evidence, expert testimony may be admitted if the expert's "specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue." We have held that "Rule 702 has three major requirements: (1) the proffered witness must be an expert, *i.e.,* must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge [, *i.e.,* reliability]; and (3) the expert's testimony must assist the trier of fact [, *i.e.,* fit]." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) (internal quotation marks and citations omitted). These requirements are met here.

Dr. Wolf was qualified to provide expert testimony concerning the psychological effects of sexual trauma given her educational background and experience. For example, in obtaining her Ph.D. in psychology and counselling, she wrote a dissertation that focused on "the effects of . . . sexual trauma." JA2403. She has also counseled over 100 sex trafficking victims.

Appellants' argument that Dr. Wolf lacks experience regarding the psychological aspects of sex trafficking is unpersuasive. Although Dr. Wolf is not a licensed psychologist, she has relevant experience in psychology. In addition to her Ph.D., she is a professor of counselling and psychology at B.H. Carroll Theological Institute and is a member of the American Psychological Association. Considering we have interpreted Rule 702's requirements concerning specialized knowledge fairly liberally and have held "that a broad range of knowledge, skills, and training qualify an expert as such," *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994), the District Court did not abuse its discretion in concluding Dr. Wolf was qualified to testify in this case.

Likewise, the District Court did not abuse its discretion in admitting Dr. Wolf's testimony. Dr. Wolf's testimony satisfies reliability because it is experience based testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151 (1999). It also satisfies the fit requirement.[5] As our sister courts have recognized, an expert educating a jury on general principles of sex trafficking and sexual abuse can be helpful to the fact finder in assessing fact witnesses' credibility. *See United States v. Robinson*, 993 F.3d 839, 849 (10th Cir. 2021), *cert. denied,* 142 S. Ct. 243 (2021); *United States v. Brooks*, 610 F.3d 1186, 1195–96 (9th Cir. 2010); *United States v. Taylor*, 239 F.3d 994, 998 (9th Cir. 2001); *United States v. Anderson*, 851 F.2d 384, 392 (D.C. Cir. 1988). Furthermore, Dr. Wolf's testimony aided the jury with assessing how the Appellants recruited, enticed, harbored, or maintained the victims or used "force, fraud, [or] coercion . . . to cause the [victims] to engage in a commercial sex act." 18 U.S.C. § 1591.

### F. Bridges's Sentence

Bridges challenges his sentences on two bases. First, he argues that his criminal history score was improperly calculated. He contends that his theft conviction should not have been included in his criminal history score because it was relevant to his sex trafficking conviction. Second, he asserts his sentence of 420-months' imprisonment was procedurally and substantively unreasonable.

#### 1. Criminal History Score Calculation

---

[5] The Advisory Committee Notes to the 2000 amendment to the Rules state that "it might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case." Fed. R. Evid. 702 advisory committee's note to 2000 Amendment.

"We exercise plenary review over the District Court's interpretation and application of the Guidelines" and "review determinations of fact for clear error." *United States v. Zabielski*, 711 F.3d 381, 386 (3d Cir. 2013) (citing *United States v. Thomas*, 327 F.3d 253, 255 (3d Cir. 2003)).

Pursuant to the Sentencing Guidelines, a defendant receives criminal history points for each prior sentence. U.S.S.G. § 4A1.2. "The term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." *Id.* The Guidelines further "define[] relevant conduct as all acts and omissions committed . . . by the defendant; and that occurred during the commission of the offense of conviction, . . . or in the course of attempting to avoid detection or responsibility for that offense." *United States v. Washington*, 549 F.3d 905, 920 (3d Cir. 2008) (internal quotation marks and citation omitted).

Here, the Probation Office calculated a criminal history score of five, which established a criminal history category of III. PSR 24 ¶ 119. This score included three points based on prior criminal convictions, one of which was for his conviction based on his confrontation with R.S. for which he was sentenced to two years of imprisonment and suspended one year probation. As the Government concedes, the District Court erred in adopting the Probation Office's calculation of Bridges's criminal history score. The theft occurred during Bridges's trafficking of Z.W., Count 2. *See* U.S.S.G. §§ 1B1.3(a)(1)(A)). "However, the error was completely harmless because even with the one point reduction, [Bridges] would remain in criminal history category [III] and the

same Guideline range would have applied." *United States v. Isaac*, 655 F.3d 148, 158 (3d Cir. 2011).

### 2. Reasonableness of the Sentence

In determining whether a sentence is reasonable, "we must first ensur[e] that the [D]istrict [C]ourt committed no significant procedural error, such as . . . failing to consider the [18 U.S.C.] § 3553(a) factors . . . or failing to adequately explain the chosen sentence." *United States v. Pawlowski*, 27 F.4th 897, 911–12 (3d Cir. 2022) (internal quotation marks and citations omitted). Second, we consider whether the sentence "is s substantively reasonable given the totality of the circumstances." *Id.* (internal quotation marks and citation omitted). "Absent significant procedural error, 'we will affirm [the sentence as substantively reasonable] unless no reasonable sentencing court would have imposed the same sentence on th[e] particular defendant for the reasons the district court provided.'" *United States v. Douglas*, 885 F.3d 145, 150 (3d Cir. 2018) (internal quotation marks and citation omitted). Generally, "if the sentence is within the applicable Guidelines range, we may presume it is reasonable." *Pawlowski*, 27 F.4th at 911–12 (internal quotation marks and citation omitted).

The District Court's sentence was procedurally sound. It adequately considered the § 3553(a) factors and explained why it was imposing a sentence of 420 months' imprisonment. Bridges's arguments on appeal are unpersuasive. For example, he argues that the District Court did not consider his age or his other personal characteristics. However, in imposing the sentence, the District Court described his personal history, family ties, and employment history. He also argues that the District Court did not

21

address avoiding unwarranted sentencing disparities. But the District Court did reference § 3553(a)(6) in imposing its sentence. It further heard Bridges's arguments that other sex traffickers, including Jeffrey Epstein, received lenient sentences.

The District Court's sentence was substantively reasonable. Bridges's Guidelines range was life imprisonment. Because his sentence of 420 months' imprisonment was below that, we presume that his sentence was reasonable. *See Pawlowski*, 27 F.4th at 911–12; *see also United States v. Susi*, 674 F.3d 278, 289 (4th Cir. 2012) (holding a "below-Guidelines sentence is . . . entitled to a presumption of reasonableness"). Moreover, we cannot conclude that "no reasonable sentencing court would have imposed the same sentence." *Douglas*, 885 F.3d at 150. Bridges was convicted of forcibly trafficking several adult and minor, female victims. Even if we were to agree that Bridges's sentence amounts to a *de facto* life sentence, such a sentence would not be *per se* unreasonable. *United States v. Ward,* 732 F.3d 175, 186 (3d Cir. 2013) ("The fact that [a defendant] may die in prison does not mean that his sentence is unreasonable.").

## III.   CONCLUSION

For the foregoing reasons, we will affirm the judgments of Appellants' convictions.